### IN

# THE SUPREME COURT

### OF

# THE STATE OF LOUISIANA.

EASTERN DISTRICT, FEBRUARY TERM, 1826.

## L. & F. FRIQUE vs. HOPKINS & AL.

APPEAL from court of the parish and city of New-Orleans.

*Lands granted by the king of Spain to the husband alone, did not make a part of the community of acquests and gains*

*But the improvements made on them do.*

*Payment of the price of real estate may be proved by parol, but such proof of that fact, will not establish there was a sale.*

*Ten years is the period of prescription,*

PORTER, J., delivered the opinion of the court. The petitioners in this case are Laurent Frique, and Felonice Frique, the former of full age, the latter a minor above the age of puberty. They state, that they are the heirs and representatives of the late Henry Frique deceased, and that as such they have a right to recover of the defendant two thirds of a lot, with the buildings thereon, situated in the parish and city of New-Orleans, illegally alienated by their mother.

From further statements in the petition, it

appears, that at the death of the father he left three children, that one of them died without descendants, and that the mother became his heir. That Laurent Frique is the son of Henry Frique, and Felonice Frique, the other plaintiff his grand daughter, is the child of Celestine Frique, deceased.

In addition to the prayer, that the lot may be sold, and a partition made of the proceeds; the plaintiffs demand the two thirds of the rents and profits from the decease of their mother, up to the time of rendering final judgment.

The defendant pleaded the general issue; prescription; the receipt by the heirs of the portion which belonged to them of their fathers estate; and he cited in warranty his vendor, Poincy.

Poincy appeared, and vouched John F. Miller, who filed an answer, which did not change the issues already formed by the pleadings; except in claiming to be paid for the buildings and improvements in case the plaintiffs succeeded.

The court below gave judgment for the petitioners, and the defendant appealed.

East'n. District.
*February* 1826.

L. & F. FRIQUE
*vs.*
HOPKINS & AL.

where the possessor claims by a title adverse to the petitioners.

It is sufficient for the prescription *longi temporis*, that the buyer be in good faith.

If the title be null in itself, or discloses facts, which show the vendor has no title, the buyer cannot plead this prescription

East'n. District.
*February* 1826.

L.&F.Frique,
*vs.*
Hopkins & al.

The case presents three questions of law, the facts do not appear to be disputed.

The first is, whether the property alienated by the mother, made a part of the community of acquests and gains?

The second, whether there is legal evidence of the plaintiffs having approved of the sale?

And the third, whether they are now barred by prescription?

I. The property claimed in the petition, as belonging to the ancestor of the plaintiffs, was granted to him by the king of Spain. A copy of the grant comes up with the other evidence. It does not appear to contain any thing that would authorise the court to take it out of the general rule, which governs cases of this kind. The consideration or moving cause of the gift is stated, to be the public good, and in order to increase the population of the city.

In the case of *Gayoso* vs. *Garcia*, reported in the first volume of the new series, we declared it the opinion of the court, that lands granted by the king of Spain, to either husband, or wife, during coverture, did not enter into the

community, but belonged exclusively to the East'n. District.
*February* 1826.
individual to whom it was granted.

L.&F.FRIQUE,
*vs.*
HOPKINS & AL.

The same question is presented in this cause, and we have again examined it, with the attention, that is due to the importance of the subject, and to the argument at the bar.

The law on which the former decision of the court was principally based, is in the following words :—*Toda cosa que el marido y muger ganaren ó compraren estando de consuno hayanlo ambos por medio : y si fuere donadio de rey ó de otri y lo diese á ambos hayanlo marido y muger : y sí lo diere al uno hayalo lo solo aquel á quien lo diere.* *Novíssima Recop. lib.* 10, *tit.* 4, *ley* 1; which is *ley* 2, *tit.* 9, *lib.* 5 *of the Nova Recopilación.*

By this statute, it is expressly declared, that whatever may be given by the king, or another, to both husband and wife, shall belong to them jointly; but that if given to any one of them, it shall be considered as belonging to the individual to whom it is given.

The commentators seem to understand this law to apply to all cases coming within its letter, except those where the king gives in remuneration of services rendered him, and even this exception is made, with the limita-

tation that the husband serves without pay, and is supported at the expense of the community. This opinion is supported by a law of the *fuero real* which declares, " *y si fuere en hueste sin soldado á costa de si, é de su muger, quanto ganare de esta guisa, todo sea del marido, é de la muger: ca asi como la costa es communal de ambos, lo que así ganaren sea communal de ambos,*" *Fuero Real, lib.* 3, *tit.* 3, *ley* 3, which is *lib.* 10, *ley* 2, *tit.* 4, *Novíssima Recop. Febrero p.* 1, *chap.* 1, §. 22, *no.* 239 ; *ibid. p.* 2, *lib.* 1, *chap.* 4, §. 1, *no.* 21. *Gomez, en ley* 50 *de Toro.*

The correctness of the application of these laws, to a grant of lands by the former sovereign of Louisiana, has been contested on two grounds.

1st. That there is a material difference between a donation, and a concession.

2d. That as it appears, by all the regulations made here by the Spanish government, in relation to concessions for lands, that the quantity conceded, was greater or less according to the circumstance, of the grantee being married and having children, or being single ; grants made to a man who was married, must be the common property of both husband and wife.

East'n. District.
*February* 1826.

L. & F. Frique
*vs.*
Hopkins & al.

As to the first of these grounds, we apprehend there is nothing in it which requires our particular consideration. We are unable to perceive any material difference between a donation, and a concession of lands such as the former government of Louisiana was in the habit of granting. It is true concessions may be made, on consideration moving from the donee, which would take from them the character of a donation. But lands given by the king, without price paid for them, and not in remuneration of any services rendered, certainly are donations; if they be not, we are ignorant under what denomination they should be classed.

The second ground was most relied on in argument. It did not escape our attention in the case already alluded to, though no notice is taken of it in the opinion delivered. But we were unable then, as we are now, to discover in it a sufficient reason for taking the case out of the plain and positive provisions of the statute. The consideration which induced the grant or donation cannot change its character, unless there is a positive provision of law which makes the exception: as in that given from the *fuero real*, where the thing

L.&F.FRIQUE,
vs.
HOPKINS & AL.

granted is in remuneration of services render-ed, at the expense of the community. Were we to take this as valid ground for evading the positive enactment of the legislature, it would lead us, we apprehend, much further than is contemplated by those who press it on our adoption. By the regulations of the Spanish government, if the individual who applied for land was unmarried a certain quantity of land was given to him; if he had a wife this quan-tity was increased; and if he had children an additional number of acres were conceded. Now if the circumstance of his being married made the thing given become the property of both husband and wife, we must, on the same principle, hold, that where children were the moving cause, they too should be considered as owners in common of the land conceded. But that such was the effect of the donee hav-ing a family, we believe was never even sus-pected; it certainly is unsupported by law. Many donations are made, in which the donee's having a wife, and being burthened with a large family, is a great consideration for the be-neficence of the donor; but this motive in him, does not prevent the person to whom the gift is made, from being considered its owner, nor

prevent the thing given from descending to his heirs.

East'n. District.
*February*, 1826.

L. & F. FRIQUE
*vs.*
HOPKINS & AL.

It was, however, said that the object in making these grants was to encourage the settlement of the country ; and that to carry that object into effect, it was necessary the lands should be considered as given to both husband and wife.    To this it might be answered, and with great force, that if the government were of that opinion, it is strange they did not at once say so, and by making the concession in the name of both, place the matter beyond doubt ; and not, by granting it to one of the spouses, leave it to the operation of a positive law which repelled the idea.    But if we could enter into political considerations, in order to ascertain whether they could repeal statutes, we would, in this case, be led to the examination of a nice and refined question of policy, in relation to the effect on national prosperity, of giving to the wife a distinct interest in the property acquired during marriage ; one on which men would be found to differ, according to their education and particular modes of thinking.    Some nations, whose fate has been as prosperous as those of any community, with whose history we are acquainted, proceed

L. & F.Frique
*vs.*
Hopkins & al.

on an entirely opposite principle, and act on the idea, that domestic felicity, and consequently public happiness, are best promoted by considering the acquisitions made during coverture, as belonging to the husband alone.

It is true the Spanish law viewed this matter in a very different light, but the same law makes a positive exception, in respect to donations, and the political consideration is surely not so clear as to authorise us to make a distinction where the legislator has made none. On the contrary, it may be as readily conceived that those to whose care the colonization of this country was entrusted, thought strangers might be invited into it, and settlements formed with as much facility by giving all the land to the husband, as by giving it to the husband, wife, and children. The father, as head of the family, had a right to select his place of residence; the wife was bound to follow him. It was natural he should go to that place where the most advantages were conferred *on him*; where he knew, in the event of losing his life, from the perils and sufferings of a first settlement, that the objects which induced him to come there would go to his children; and not be divided with those of

another bed, in case his wife survived him and married a second time.

But whether these views be correct or not, we feel satisfied that the reasoning which might be opposed to them, is not of sufficient weight to allow us to decide contrary to the express and positive provisions of the law.

Nor do we think that the circumstance of these lands being in general waste and uncultivated makes any difference in the right of property. The augmentation of value given by the common labor makes a part of the *acquests and gains*, and the wife has a right to the one half the value of the improvements, as she would if they had been made on any other property belonging to the husband, but her right in the ameliorations made *on this property* is quite distinct from a right *to the property.* *Febrero, p.* 2, *lib.* 1, *cap.* 4, *sec.* 4, *nos.* 74 *and* 75; *Civil Code*, 338, *art.* 70.

Considering, therefore, that the lot conceded to the husband, belonged to him and descended to his heirs, we proceed to examine whether they have been divested of the title.

II. It is urged they have, because they received the price for which their mother sold the lot. The evidence offered in support of

East'n. District.
February, 1826·

L.& F. FRIQUE
vs.
HOPKINS & AL.

this part of the defence is entirely verbal, and its introduction was excepted to in the court below. Now, though it is clear that payment of the price of an immoveable may be established by parol testimony, yet this species of proof is not sufficient to show both the sale and the receipt of the purchase money. To permit such evidence to have that effect would be virtually repealing all the provisions of our law in regard to the mode of proving the alienation of real estate. Nor is the case made better by viewing it as a ratification of the sale by the mother; *for she did not sell it as making a part of the succession, but in her own right.* Nor does it change our view of it, to consider the receipt of the money as operating a partition; for partition includes alienation and sale, and consequently requires as high evidence as any other alienation of immoveable property would.

III. The remaining questions relate to the plea of prescription. The first enquiry is, by what prescription should the case be governed? The plaintiff contends that of thirty years, because it requires that space of time to bar a suit for partition; and if this should not be considered an action of that kind, he

still urges that the same period must govern, because the title under which the defendant acquired, is not such a one as enables the possessor to acquire a right in ten years.

This, in our opinion, is not an action of partition. The defendant claims by a title directly adverse to that of the plaintiffs; and so the plaintiffs understood his claim, for they aver that he is wrongfully and unlawfully in possession of that part of the property which belongs to them.

The other point is of more difficulty. Before we go into the question, whether the titles under which the defendant claims, are sufficient to enable him to plead the prescription of ten years, it is proper to notice an authority read by the counsel for the plaintiffs, from the *Partidas*, that it is necessary, for the support of this plea, that the seller as well as the buyer should be in good faith. This is directly opposed to the generally received opinions on this matter; and after an attentive examination of the law relied on, and others contained in the same work, we are of opinion, it is sufficient for this prescription if the *buyer* receives a title capable of transferring the property, and possesses in good

East'n. District.
February 1826.

L. & F. FRIQUE
*vs*
HOPKINS & AL.

faith. Even taking the provision in the *Partidas* in the sense contended for by the plaintiffs, and without reference to the other enactments on the same subject, the plaintiff who is of full age would be barred. A law, contained in the same work, which was not cited in argument, makes it the duty of the owner, if he is aware of the alienation, to sue in ten years, where the vendor knowingly sells without a title. In the present instance this knowledge is fully brought home to the plaintiffs, by the parol evidence, by the deed being an authentic one, and by the possession which the purchaser took of the premises. *Part.* 3, *lit.* 29, *laws* 18 *and* 19. *Ibid,* 6, *lit.* 7, *law* 14. *Dufour vs. Camfranc,* 11 *Martin,* 716.

There is a good deal of confusion, and some apparent contradiction, in the books which treat of the title necessary to form the basis of the prescription *longi temporis.* The correct doctrine, we think, is this: that if the title, under which the acquisition is made, be null in itself, from defect of form, or discloses facts which show the person from whom it is acquired has no title, it cannot form the basis of this prescription; because the party acquiring must be presumed to know the law, and

consequently wants the *animo domini,* which is
indispensable in cases of this kind. But where
the title is free from these defects, and the
property is not transferred, by want of title in
the party making the transfer, then it forms a
good ground for the prescription; or in other
words, the enquiry is, whether the error be
one of fact, or of law. *Pothier, Traité de Pres-
cription, no. 57.*

In the present case some doubts might ex-
ist which of these the present defendant was
subject to, if the case were examined in rela-
tion to the title from the mother to Phillibert,
though we are inclined to think it was more
properly one of fact, than of law. But what-
ever might be the doubts in relation to his
title, there can be none, we think, respecting
that of Boirin, who purchased from the first
vendee. The sale to him is perfect, in point
of form, and discloses no fact which shows the
title to be defective. It is not sufficient to de-
prive the possessor of the right of pleading
prescription, that he might, by enquiry and
careful examination, discover his vendor had
no title. If it were, then the law would have
no effect, which says the want of title in him
who transfers, shall not prevent the party

East'n. District.
February 1826.

L.& F. FRIQUE
vs.
HOPKINS & AL.

to whom the transfer is made from pleading prescription.

This opinion we entertain with regard to the title, settles the question respecting the rents and profits.

It is therefore ordered, adjudged, and decreed, that the judgment of the parish court be annulled, avoided, and reversed; and it is further ordered, adjudged, and decreed that the minor plaintiff, whose claim has not been barred by prescription, do recover off the defendant the one third of the premises claimed in the petition; that the defendant pay the costs of the court below, and the plaintiffs those of appeal.

*Morel* for the plaintiffs; *Carleton & Lockett* for the defendants.